RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2019-SC-0341-DG

RAY WILLIAM POWERS                                         APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2018-CA-0153
CALLOWAY CIRCUIT COURT NO. 16-CR-00234

COMMONWEALTH OF KENTUCKY                       APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

Ray William Powers was convicted following a jury trial in Calloway Circuit Court of one count each of sodomy in the first degree (incapable of consent/physically helpless) and rape in the first degree (incapable of consent/physically helpless) and received a sentence of seventeen years' imprisonment. The Kentucky Court of Appeals affirmed his conviction on direct appeal. Powers petitioned this Court for discretionary review, which we granted. After a careful review of the record and pertinent authority, we affirm the Court of Appeals.

On September 20, 2016, nineteen-year-old Sarah[1] worked her regular shift at Walmart. That evening, Powers—who is Sarah's uncle and with whom

---

[1] Pursuant to the policy of this Court, we refer to victims of sexual crimes by pseudonyms to protect their privacy.

she lived at that time—sent her text messages imploring her to join him at his storage unit to drink. The storage unit was set up as a hangout, complete with furniture and heat, and Sarah had often spent time there with Powers. After initially declining the invitation, Sarah relented and joined Powers around midnight. She claimed her purpose in going was to obtain drugs as Powers had previously provided her with Lortab. Powers was the only other person present when Sarah arrived.

At Powers' insistence, Sarah consumed a quantity of alcohol and took two pills he gave her. Powers indicated the pills were Xanax and Lortab. A short time later, Sarah became groggy and her memory was sporadic. She told Powers she was craving onion rings, so the pair left the storage unit to obtain some food. Upon their return about 1:30 a.m., Sarah passed out. As she began to awaken, Sarah discerned what appeared to be a cellphone flashlight shining in her eye before comprehending she was being videotaped. Sarah then realized Powers was raping and sodomizing her, alternating between vaginal and oral intercourse. Her panties and left pant leg were off but her right pant leg was still on. When Sarah began to move, Powers quickened his pace then rapidly put Sarah's pants back on. He told her he had put $200 in her wallet after deflecting Sarah's questions about what had occurred.

Soon thereafter, Sarah left the storage unit and drove to Walmart, believing she would be safe there. She did not go to the hospital or the police because she was afraid to report what had happened. After wandering around Walmart for a few hours, Sarah drove to her boyfriend's house, arriving at

2

approximately 6:00 a.m. She chose not to tell her boyfriend about the rape and sodomy.

The following day, September 22, 2016, knowing Powers was out of town, Sarah used the $200 Powers had given her to buy groceries and took them to his house. While there, Sarah did her laundry, packed her belongings, and moved out of Powers' residence. Having nowhere else to live, Sarah moved in with her boyfriend. That evening, Sarah broke down and told her boyfriend about the rape and sodomy. The pair went to Powers' storage unit to pick up more of Sarah's belongings and to look for evidence relating to the rape and sodomy. They then went to the Trigg County Hospital where a physical examination was performed which revealed no relevant evidence. Due to the circumstances and the passage of time, no sexual assault examination was performed.

Sarah and Powers were each interviewed by Kentucky State Trooper Jody Cash on September 23, 2016, regarding the alleged rape and sodomy. Trooper Cash seized a digital video recorder and a cellphone Powers had brought to the interview. Subsequent forensic examination of the phone revealed five short video clips made between approximately 2:05 and 2:43 a.m. on September 21, 2016, which had been deleted. Using digital forensic tools, all five videos were recovered.

The recovered videos showed Powers sexually assaulting Sarah in graphic detail, with Sarah's exposed vagina as the primary focus of each video. Powers can be seen performing oral sex on Sarah, manipulating her vagina

3

with his fingers, and placing his penis near her vagina, although no penetration is depicted. Powers' face is clearly visible in two of the videos. In each video, Sarah remains in nearly the same position, is entirely motionless, makes no sound, and displays no reaction to the various manipulations of her vagina.

On October 8, 2016, Trooper Cash interviewed Powers again. At least six times during the interview, Powers stated he had engaged in a sexual encounter with Sarah at the storage unit but insisted it was consensual. He said his DNA would be found inside Sarah and did not understand "what the big deal was" because it "was just some pills and $200." He indicated he had told his wife about having sex with Sarah. None of these statements were made in response to any questioning by Trooper Cash.

Powers was subsequently indicted on one count each of rape in the first degree (incapable of consent/physically helpless), sodomy in the first degree (incapable of consent/physically helpless), incest (forcible compulsion/incapable of consent), and tampering with physical evidence. The incest and tampering charges were dismissed without prejudice prior to trial.

Shortly before trial was to begin, Powers sought to introduce evidence Sarah had engaged in sexual intercourse with her boyfriend after the alleged rape and sodomy but before presenting to the emergency room. He argued the evidence was relevant to Sarah's state of mind and tended to show she had a motivation to fabricate an allegation of rape to pacify her boyfriend or to keep him from suspecting she was engaged in a consensual relationship with

4

Powers. He asserted the evidence was admissible under an exception to KRE[2] 412, the so-called "rape shield law," because Sarah's behavior was so aberrant as compared to that of a typical rape victim. After a hearing, the trial court denied Powers' motion. It found even if an exception to KRE 412 were applicable, the proffered evidence was wholly irrelevant and therefore was inadmissible pursuant to KRE 401 and 403.

The case proceeded to trial and the jury ultimately found Powers guilty of both rape and sodomy. He received an aggregate sentence of seventeen years' imprisonment. A divided Court of Appeals panel affirmed his conviction and sentence on direct appeal. We granted Powers' motion for discretionary review which sought clarification of the application of the exceptions to KRE 412's general prohibition of evidence of a sexual nature pertaining to the victim of alleged sexual misconduct under the unique circumstances of this case.

KRE 412 is primarily an exclusionary evidentiary rule. It excludes evidence of an alleged victim's "sexual behavior" and "sexual predisposition" unless the evidence falls into one of three exceptions. The first exception allows evidence of specific sexual acts of an alleged victim to be admitted to prove a third person "was the source of semen, injury, or other physical evidence." KRE 412(b)(1)(A). KRE 412(b)(1)(B) authorizes the use of evidence of instances of sexual behavior between the accused and alleged victim to prove consent. Finally, the residual exception in KRE 412(b)(1)(C) allows the introduction of "any other evidence directly pertaining to the offense charged."

---

[2] Kentucky Rules of Evidence.

5

> The rule is meant both to shield the victims of sex crimes from painful and embarrassing questions and disclosures about their private sexual activities as well as to preserve the fairness of the proceedings by excluding irrelevant attacks on the victim's character and guarding against distracting the jury with collateral matters.

*Montgomery v. Commonwealth*, 320 S.W.3d 28, 39 (Ky. 2010). Although the "shield" is not impenetrable, we have previously held KRE 412's exceptions are to be used "sparingly and carefully." *Violett v. Commonwealth*, 907 S.W.2d 773, 776 (Ky. 1995). These exceptions pertain to "legitimate, if not compelling, needs for defense evidence." Robert Lawson, The Kentucky Evidence Law Handbook, § 2.30[4][a], p. 162 (4th ed. 2003).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Commonwealth v. Bell*, 400 S.W.3d 278, 283 (Ky. 2013). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

The trial court found the proffered evidence irrelevant and concluded it need not reach the KRE 412 question. Its written order did, however, include KRE 412 as a basis for denying Powers' motion. On the contrary, the majority of the Court of Appeals held KRE 412 was controlling and believed it did not need to analyze the relevancy question as KRE 412 plainly excluded the evidence, stating simply that none of the exceptions were applicable without further discussion or explanation. The concurring opinion concluded a victim's actions immediately following an offense always directly pertain to the offense itself and thus the testimony should have been permitted under KRE

6

412(b)(1)(C). Again, no further discussion or explanation was undertaken. However, the concurrence ultimately determined the failure to allow the proffered evidence resulted in no more than harmless error.

The Commonwealth did not allege Powers was the source of any semen, physical injury, or other physical evidence, as no sexual assault examination was completed. There was likewise no allegation Sarah and Powers had ever previously engaged in consensual sexual conduct and, to the contrary, Powers never claimed consent was based on prior sexual experiences with Sarah. Thus, the exceptions contained in KRE 412(b)(1)(A) and (1)(B) are inapplicable, leaving only the residual exception contained in KRE 412(b)(1)(C) for evidence "directly pertaining to the offense charged." This exception was meant to be "a safety valve to allow for unanticipated circumstances in which evidence of a victim's prior sexual conduct would be appropriate." *Montgomery*, 320 S.W.3d at 40.

Powers contends evidence of Sarah's sexual intercourse with her boyfriend was relevant and probative because it tended to show Sarah's state of mind, revealed a potential motive for fabricating an allegation of wrongdoing, and helped explain why a "rape kit" was not performed. He asserts the evidence thus pertained to the offenses for which he stood accused and should have been deemed admissible under the residual exception to KRE 412. Powers then argues the trial court's decision deprived him of vital defense evidence and constituted a violation of his Constitutional right to present a meaningful defense. We disagree with Powers' assessment of the evidence.

7

The evidence Powers sought to admit would have added little, if anything, to his defense. The jury was made aware Sarah was in a relationship she wished to maintain. On cross-examination she was questioned extensively about this relationship, she admitted to being untruthful with her boyfriend regarding her whereabouts on the night of the rape and sodomy, and the jury was told she moved in with her boyfriend the morning following the sexual attack. These facts were all necessary to Powers' claim Sarah had a reason to fabricate an allegation of wrongdoing against him. He was barred only from eliciting testimony regarding a single sexual act. Apart from speculation and unsupported assertions, Powers offers nothing to connect this instance of sexual intercourse to his offenses. He was obviously not charged with a crime resulting from Sarah having intercourse with her boyfriend. Powers offers no logical explanation or connection between the rape and sodomy and Sarah's subsequent consensual sexual encounter with her boyfriend. We are unconvinced by Powers' bald assertions Sarah's engaging in intercourse with her boyfriend "directly pertained" to the crimes for which he stood charged.

Perhaps realizing this potentially fatal logical flaw, Powers quickly segues into arguing admission of the proffered evidence was required to inform the jury why no "rape kit" was performed. However, this contention again misses wide of the mark. Powers has never denied engaging in sexual intercourse with Sarah, admitting as much to Trooper Cash, and reaffirming the admission on appeal. As previously stated, the Commonwealth never sought to show Powers was the source of semen, injury, or other physical evidence of any kind—the

8

very results a "rape kit" would reveal. As none of the matters were in issue, there was no reason to explain the absence of a sexual assault examination.

Revealing to the jury that Sarah was sexually active after the rape and sodomy but before reporting it to the authorities would be of no consequence to any controverted fact, thus making its relevance highly doubtful. Additionally, admitting testimony about this single instance of consensual sexual activity would run afoul of KRE 412's exclusionary purpose of protecting the victim of a sex crime from an unfair and unwarranted assault on her character. The majority of Powers' defense was centered on attacking Sarah's credibility. It is clear his sole purpose of seeking to elicit the proffered testimony was not to explain the absence of a piece of evidence, reveal Sarah's state of mind, or show her motivation to fabricate the allegations, but rather to further attempt to vilify Sarah and paint her as sexually promiscuous. "Its admission would undermine the purpose of KRE 412, shifting the focus from the real issues, and effectively put the victim on trial." *Hall v. Commonwealth*, 956 S.W.2d 224, 227 (Ky. App. 1997). This is the precise reason KRE 412 and its strong prohibitions exist. "[T]he KRE 412 balancing test contains 'an obvious tilt toward exclusion over admission.'" *Commonwealth v. Dunn*, 899 S.W.2d 492, 494 (Ky. 1995) (citing Lawson, The Kentucky Evidence Law Handbook, § 2.30 (3d ed. 1993)). The residual exception of KRE 412(b)(1)(C) is reserved for exceptional and unanticipated circumstances. This case presents neither. The trial court clearly did not abuse its discretion in denying Powers' motion. Exclusion was appropriate.

Finally, we briefly discuss Powers' contention the trial court's exclusion of the proffered evidence deprived him of his right to present a meaningful defense and constituted a violation of the Confrontation Clause of the Sixth Amendment. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (citation omitted) (emphasis in original). The United States Supreme Court has held the right of a defendant to present a defense is not abridged unless the challenged rule contravenes "a weighty interest of the accused and [is] arbitrary or disproportionate to the purposes [it is] designed to serve." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal citation and quotation marks omitted).

KRE 412 constitutes a proper application of the principle that, in limited and specific situations, the right of a criminal defendant to confront and cross-examine witnesses must yield to other legitimate state interests. *See Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) ("Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."). In sexual assault cases, the Commonwealth's interest is in protecting the privacy of sexual assault victims. *Dennis v. Commonwealth*, 306 S.W.3d 466, 474 (Ky. 2010).

Here, the trial court permitted Powers to extensively cross-examine Sarah to develop his defense and attack her credibility. The only topic the trial

court prohibited inquiry into was the single consensual sexual act with another man. Exclusion of this topic was not arbitrary and was plainly within the bounds of the purpose of KRE 412. Powers had sufficient opportunities to develop his various theories of defense and his right to do so was not improperly abridged by the trial court's ruling. There was no constitutional violation and Powers' assertion to the contrary is without merit.

For the foregoing reasons, the opinion of the Court of Appeals is AFFIRMED.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Nathan Goens
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General

Aspen Caroline Carlisle Roberts
Assistant Attorney General

Bryan Darwin Morrow
Assistant Attorney General

11